J-S35017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: V.L.D.H., A MINOR

APPEAL OF: A.R., MOTHER

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 2897 EDA 2014

Appeal from the Order entered September 3, 2014,
in the Court of Common Pleas of Philadelphia County, Domestic
Relations, at No(s): CP-51-AP-0000397-2014,
CP-51-DP-0000811-2013

BEFORE: MUNDY, OLSON, and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                       **FILED JUNE 24, 2015**

A.R. ("Mother") appeals from the order dated and entered on September 3, 2014, granting a petition filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency") to involuntarily terminate Mother's parental rights to V.L.D.H. ("Child"), a female, who was born in January of 2012.[1]  We affirm.

_____

* Retired Senior Judge specially assigned to the Superior Court.

[1] DHS filed the petition pursuant to Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and sought to change Child's permanency goal from reunification to adoption, pursuant to Section 6351(f) of the Juvenile Act, 23 Pa.C.S.A. § 6351(f).  On September 3, 2014, the trial court continued the hearing on the goal change petition to November 20, 2014.  On November 21, 2014, the trial court entered a decree involuntarily terminating the parental rights of Child's father, V.P.H., granting his petitions to confirm consent to adoption and his petition for voluntary relinquishment filed on October 23, 2014, and changing Child's permanency goal to adoption, pursuant to Section 6351(f) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f).  Father has not filed a notice of appeal from the decree terminating his parental rights, nor is he a party to the instant appeal.

The record reflects that DHS filed a petition to involuntarily terminate Mother's parental rights to Child on August 13, 2014. On September 3, 2014, the trial court held the termination hearing. At the hearing, DHS presented the testimony of Erica G. Williams, Psy.D., the Director of Forensic Programming at Assessment and Treatment Alternatives, Inc., ("ATA"), who performed a parenting capacity evaluation of Mother. N.T., 9/3/2014, at 18, 28-29. DHS then presented the testimony of Joanna Pecora, who previously was employed by Volunteers of America as a caseworker, and who supervised the visitation between Child and Mother between November of 2013 and June of 2014, when her agency closed. *Id.* at 45-47. Next, DHS presented the testimony of Tiffany Byrd, the foster care worker assigned to Child's case through Lutheran Children Parenting Services. *Id.* at 18, 67-68. DHS also presented the testimony of Barbara Forest, DHS social services manager currently assigned to Child's case. *Id.* at 17, 78-80. Finally, Mother testified on her own behalf.

Based on the testimonial and documentary evidence, the trial court set forth the factual background and procedural history of this case as follows:

> On January 28, 2013, DHS received an Emergency General Protective Services report ("EGPS"), alleging that Child fell three times while in Mother's care. On March 12, 2013, the Department of Human Services ("DHS") visited Mother and Child at Peoples' Emergency Center ("PEC"). Mother explained to DHS that it was difficult for her to manage [] Child in the stroller. On April 3, 2013, during another DHS visit, Mother stated that she had obtained employment at PEC, that she had planned to return to mental health treatment, and that [] Child will attend daycare. DHS then

learned that PEC intended to discharge Mother due to her non-compliance and continuous altercations with other residents, and[, in] fact, Mother was discharged on April 9, 2013. On April 10, 2013, Mother was residing at the Episcopal Community Services ("ECS") St. Barnabas Mission. On April 18, 2013, DHS learned that Mother was non-compliant with ECS policies and had frequent altercations with ECS staff. On April 19, 2013, DHS received an [EGPS] report [], alleging that Child had a severe ear infection and Mother was not administering medicine, as directed. DHS learned that St. Barnabas planned to discharge Mother as of April 13, 2013.

On April 19, 2013, DHS obtained an Order of Protective Custody ("OPC") and Child was placed under paternal aunt's care. Mother was no longer residing at [ECS] St. Barnabas Mission[.] At the shelter care hearing on April 22, 2013, Child was temporarily committed to DHS. On April 29, 2013, Child was adjudicated dependent and fully committed to DHS. The court ordered Mother to have supervised visits at the agency and she was referred to the Behavioral Health System ("BHS") for a psychological evaluation. On May 23[, 2014,] a Family Service Plan ("FSP") was completed for Mother. The FSP objectives were: to meet Child's daily basic needs including food and clothing; to provide Child with safe living conditions and supervision; to stabilize her mental health; maintain the relationship with her Child through regular visitation; and participate in placement activities. On July 30, 2013, in a permanency review hearing, the court found that Mother was minimally compliant with her FSP objectives. Mother was referred to the Achieving Reunification Center ("ARC") twice but she was discharged due to her non-compliance. Mother was ordered to attend the North East Treatment Center ("NET") for mental health on a consistent basis, but eventually shortly thereafter stopping attending. On August 28, 2013, Mother attended a second FSP meeting. Mother re-engaged mental health treatment at NET on October 14, 2013. On October 29, 2013, in a permanency review hearing, the court found that Mother was moderately compliant with the FSP. Mother was ordered to continue attending NET, to keep searching for appropriate housing, and to attend co-parenting counseling.

On January 27, 2014, in a permanency review hearing, the court found that Mother was compliant with her FSP objectives. Mother was ordered to have supervised visits with [] Child and take a parenting capacity evaluation. The court took notice that Mother was living in Horizon House Shelter. On January 31, 2014, Mother and [F]ather had an altercation at ARC. On February 10, 2014, Mother obtained a Protection from Abuse ("PFA") against [F]ather. Mother attempted to include [] Child [in] the [PFA] order[,] but it was denied. On February 18, 2014, DHS received notice from ARC that Mother was discharged for declining services. On April 23, 2014, a PFA order was issued against [F]ather as to Child. On April 25, 2014, Mother's parenting capacity evaluation recommended that Mother was to receive treatment for trauma-informed therapy; to participate [in] a psychiatric evaluation; to participate in a program to support employment; and to explore housing options independent from DHS. The evaluation concluded that if Mother were able to demonstrate observable progress, for a period of six months, unsupervised visitation would be recommended.

On April 28, 2014, in [a] permanency review hearing, the court found Mother to be minimally compliant with her FSP objectives. Mother only attended seven of the thirteen supervised visits. The court ordered visitation to remain supervised and [in] the community, only if Mother provide[d] four[-]day advance notice to the agency. The FSP objectives remained the same. DHS filed a petition for involuntary termination of Mother's parental rights on May 28, 2014. On July 17, 2014, a FSP meeting was held[,] and [] Child['s] permanency goal was changed to adoption. Mother's parental rights were terminated on September 3, 2014. Mother was present at the termination hearing. On the same day, the court found that DHS made reasonable efforts towards reunification[,] and Mother was minimally compliant with FSP objectives.

Trial Court Opinion, 12/23/2014, at 1-3.

On October 1, 2014, Mother timely filed a notice of appeal along with a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises eight issues, as follows:

A. Whether the court erred in failing to find that for the six months immediately preceding the filing of the petition, when [] Child was bonded with [Mother] and [M]other completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting [] [C]hild, obtained employment training, was seeking housing for herself and [] Child, was seeking employment, completed the majority of her family services plan objectives, and did not intend to relinquish her claim to [] Child or refused and/or failed to perform parental duties[?]

B. Whether the court erred in failing to find that for the six months immediately preceding the filing of the petition[,] [] [M]other had consistent contact and visits with [] [C]hild, [] [C]hild was bonded with her and [] [M]other completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting [] Child, obtained employment training, was seeking housing for herself and [] Child, was seeking employment, completed the majority of her family services plan objectives[?]

C. Whether the court erred in finding that there were repeated and continuing findings of incapacity, abuse, neglect and/or dependency of [] [C]hild by [] [M]other, when [] Child was bonded with her and [] [M]other completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting [] [C]hild, obtained employment training, was seeking housing for herself and [] [C]hild, was seeking employment, and completed the majority of her family services plan objectives[?]

D. Whether the court erred in finding that the conditions that led to the removal or placement of [] [C]hild continue to

exist, as to [M]other, when [] [C]hild was bonded with her and [] Mother completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting with [] [C]hild, obtained employment training, was seeking housing for herself and [] [C]hild, was seeking employment, and completed the majority of her family services plan objectives[?]

E. Whether the court erred in finding that the conditions that led to the removal or placement of [Child] continue to exist and the termination of parental rights would best serve the needs and welfare of [] [C]hild, when [] [M]other can remedy the conditions within a reasonable period of time, and when [] [C]hild was bonded with her[,] and [] [M]other completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting [] [C]hild, obtained employment training, was seeking housing for herself and [] [C]hild, was seeking employment, completed the majority of her family services plan objectives[?]

F. Whether the court erred in finding that DHS made, or did not have to make, reasonable efforts towards reunification, by either failing and/or refusing to help find a viable options or to consider options other than terminating [M]other's parental rights, when [] Child was bonded with her[,] and [][M]other completed a parenting class, stabilized her mental health issues, obtained trauma informed and based therapy, was visiting [] [C]hild, obtained employment training, was seeking housing for herself and [] [C]hild, was seeking employment, completed the majority of her family services plan objectives[?]

G. Whether the court erred in terminating the rights of [] [M]other, when the sole reason she was unable to provide housing, provide income, clothing and medical care for the care and maintenance of [] [C]hild, was her lack of income, which was changing, since she completed the job training and was actively seeking employment[?]

H. Whether the court erred in terminating the rights of [] [M]other where it was not supported by clear and convincing evidence and not in the best interest of [] [C]hild, and there was a bond between [] [M]other and

[C]hild and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of [] [C]hild, pursuant to 23 Pa[.]C[.]S[.]A[.] Section 2511(b)[?]

Mother's Brief, at 3-5 (unpaginated). [2]

Mother argues that the trial court erred in terminating her parental rights under Section 2511(a)(1), (2), (5), (8), and (b). She asserts that she obtained training for employment, was seeking housing for herself and Child, obtained mental health and trauma-based therapy, and was continuing to live in a shelter, where she complied with their rules. Mother also alleges that she applied to housing programs and completed the majority of her FSP objectives. Mother asserts that she did not intend to relinquish her claim to Child, nor did she refuse and/or fail to perform parental duties. She claims that the sole reason she was unable to obtain housing and provide medical care for Child was economic, due to her lack of income. Mother claims that her lack of income situation was changing, because she had registered with employment agencies. **See** Mother's Brief, at 9. Mother contends that the trial court erred by determining that termination would best serve Child's needs and welfare. Mother claims that she was consistently visiting Child, there was a bond between them, and that Child would suffer harm by

---

[2] In her statement of questions involved in her brief, Mother did not raise the issue of the change of Child's permanency goal to adoption under Section 6351 of the Juvenile Act. She, therefore, waived any challenge to the goal change to adoption. **See Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

- 7 -

severing that bond. Mother requests that this Court reverse the trial court's order. *Id.* at 18.

We review an appeal from the termination of parental rights in accordance with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law

- 8 -

or an abuse of discretion. **In re Adoption of Atencio**, 650 A.2d 1064, 1066 (Pa. 1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.**, quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. **See In re Adoption of C.L.G.**, 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc). This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). **Id.** at 1008.

Section 2511(a)(1),(2), (5), (8), and (b), provide, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the

child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

This Court has stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the

natural parent is attenuated. ***In re K.Z.S.***, 946 A.2d 753, 764 (Pa. Super. 2008).

We reviewed the certified record, the parties' briefs, the relevant law, and the trial court's opinion entered on December 23, 2014. We find that the trial court aptly discussed the evidence against the requirements of Section 2511(a)(1), (2), (5), (8), and (b). We will not impose our own credibility determinations and re-weigh the evidence. We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of S.P.***, 47 A.3d at 826-27. The trial court determined that Mother "has been inconsistent and her compliance with the FSP objectives has never been higher than moderate" and, at times was "minimally compliant[.]" Trial Court Opinion, 12/23/2014, at 6. The trial court stated that "Mother is unable to obtain housing on her own[,]" noting that two different shelters discharged her for failing to comply with rules and she declined housing services from the ARC program. ***Id.*** The trial court also concluded Mother failed to accomplish her FSP objectives to obtain employment or to complete recommended mental health treatment. ***Id.*** at 6-7. Moreover, the trial court recognized that "Mother only attended seven of the [13 supervised] visits granted" with Child and "never reached the point to be granted unsupervised visits." ***Id.*** at 7. In examining those visits, the trial court determined that Mother did not exhibit appropriate

parenting skills, despite completing parenting classes, and, thus, the trial court "had grave concerns about Mother's ability to provide parental supervision on her own." *Id.* at 8. The trial court acknowledged, "Child has been in care since April 19, 2013, for a period of [18] months, as to the date in which the termination petition was filed." *Id.* at 11. Based upon all of the foregoing, we conclude the competent evidence in the record supports the trial court's findings with regard to Section 2511(a).

Moreover, the competent evidence in the record supports the trial court's determination that, under Section 2511(b), termination of Mother's parental rights would best serve Child's needs and welfare. The evidence as presented supports the trial court's finding that there is no parent/child bond between Mother and Child, Child does not identify Mother as a parent, and that termination of Mother's parental rights would not harm Child. *See* N.T., 9/3/2014, at 161. The trial court found that there is a strong bond between Child and her foster parent, the foster parent is providing appropriate care, and that "Child will suffer serious harm if she is removed from [the] foster parent's home." Trial Court Opinion, 12/23/2014, at 13. We will not disturb the trial court's decision regarding Section 2511(b). *In re Adoption of S.P.*, 47 A.3d at 826-827.[3]

_____

[3] We note that, with regard to Mother's argument that DHS failed to make reasonable efforts to provide services to reunify her with Child prior to the termination of her parental rights, as previously stated, Mother waived this issue. Regardless, our Supreme Court recently held that neither subsection (a) nor (b) of Section 2511 requires the trial to consider reasonable efforts

Accordingly, we affirm the trial court's decree terminating Mother's parental rights to Child pursuant to Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act on the basis of the trial court opinion filed on December 23, 2014. We conclude that there has been no error or abuse of discretion in this case and that the December 23, 2014 opinion meticulously, thoroughly, and accurately disposes of Mother's issues on appeal. Therefore, we affirm on the basis of the trial court's opinion and adopt it as our own. Because we have adopted the trial court's opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015

---

in relation to a decision to terminate parental rights. ***In the Interest of: D.C.D.***, 105 A.3d 662, 675 (Pa. 2014). The trial court, in the instant matter, considered the reasonable efforts on the part of DHS to reunify Child with Mother, and concluded that DHS did make reasonable efforts. Our review of the record shows that there is ample evidence to support the trial court's determination that DHS made reasonable efforts, and, despite being offered reasonable services and completing parenting classes, Mother failed to satisfy her FSP goals.